**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| WAGSTAFF & CARTMELL, L.L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00870-GAF |
| | ) | |
| NEAL R. LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

## SUGGESTIONS IN SUPPORT OF PLAINTIFF WAGSTAFF & CARTMELL L.L.P.'s MOTION TO EXCLUDE THE EXPERT TESTIMONY OF NEAL R. LEWIS

Plaintiff Wagstaff & Cartmell, L.L.P. ("Wagstaff") respectfully moves this Court, under Rule 702 of the Federal Rules of Civil Procedure and the standards laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude the proffered expert testimony of Defendant Neal R. Lewis. Wagstaff offers the following Suggestions in Support of its Motion:

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................2

TABLE OF AUTHORITIES ...........................................................................................3

I.      INTRODUCTION............................................................................................5

II.     BACKGROUND ..............................................................................................6

  A.    Lewis's billing records.....................................................................................7

  B.    Lewis's value estimation .................................................................................8

III.    DAUBERT STANDARD...............................................................................11

IV.     ARGUMENTS AND AUTHORITIES.........................................................12

  A.    This Court should preclude Lewis's valuation opinion because he does not
        support his $██████ figure with any reliable facts or data. ..................12

  B.    Lewis's valuation opinion is irrelevant because it does not measure his work
        objectively, as is required to recover on a *quantum meruit* theory......................15

  C.    Lewis's valuation opinion is unreliable, as there is too great an "analytical gap"
        between his conclusion and what little data he relies upon...................17

  D.    Lewis has not established that he is qualified to opine about billing rates..........18

  E.    Lewis's opinion that he did work at Wagstaff's request is not an expert opinion.19

V.      CONCLUSION ...............................................................................................19

CERTIFICATE OF SERVICE ......................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Bennett v. Corizon, LLC*, No. 2:10-CV-04149-SRB, 2016 WL 8231827 (W.D. Mo. Oct. 28, 2016) ................................................................................................................... 11

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ............................................................................................ Cover, 5, 11-12, 14-15, 18-19

*Emery v. Hunt*, 272 F.3d 1042 (8th Cir. 2001) ...................................................... 16

*Fish v. St. Cloud State Univ.*, 295 F.3d 849 (8th Cir. 2002) ................................................. 16

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ..........................................................11-12, 17

*Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986 (8th Cir. 2001) ................................11-12

*Henry v. Johnson*, No. 16-4249-CV-C-WJE, 2018 WL 10158856 (W.D. Mo. July 10, 2018) ............................................................................................................................. 9, 10

*In re Paolo R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ............................................. 14

*Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076 (8th Cir. 1999) .................................................. 11

*Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09-CV-01252 ERW, 2020 WL 870987 (E.D. Mo. Feb. 21, 2020) .......................................................................................... 16

*Koppe v. Campbell*, 318 S.W.3d 233 (Mo. Ct. App. W.D. 2010) ........................................ 16

*Krueger v. Johnson & Johnson Prof'l, Inc.*, 160 F. Supp. 2d 1026 (S.D. Iowa 2001), *aff'd*, 66 F. App'x 661 (8th Cir. 2003) .................................................................................... 15

*Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947 (8th Cir. 2014) ......................................... 11

*Martin v. Crown Equip. Corp.*, No. 05-3407-CV-S-GAF, 2008 WL 11337826 (W.D. Mo. Jan. 16, 2008) ................................................................................................................ 15

*Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118 (D. Minn. 2003) ..................... 15

*Norris v. Steuben Lakes Regional Waste Dist.*, No. 76D01-0905-PL-415 (Ind. Sup. Ct. Steuben Co.) ......................................................................................................................... 10

*Richard B. Curnow, M.D., Inc. v. Sloan*, 625 S.W.2d 605 (Mo. banc 1981) ..................15-16

*Savage v. Union Pac. R. Co.*, 67 F. Supp. 2d 1021 (E.D. Ark. 1999) .................................. 15

*Smith for Schwartz v. Woolace Elec. Corp.*, No. 3:17 CV 2578, 2019 WL 5420647 (N.D. Ohio Aug. 23, 2019), *aff'd*, No. 19-3907, 2020 WL 4464852 (6th Cir. Aug. 4, 2020) .......................................................................................................................... 10

*Wagner v. Hesston Corp.*, No. CIV.03-4244(JNE/JGL), 2005 WL 1540135 (D. Minn. June 30, 2005), *aff'd*, 450 F.3d 756 (8th Cir. 2006) ............................................................ 14

*Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051 (D. Minn. 2012) ......................................... 12

## **Rules**

Fed. R. Evid. 702 ...........................................................Cover, 5, 11-13, 15, 17-19

Fed. R. Civ. P. 26 ............................................................................................................... 18

## I.    <u>INTRODUCTION</u>

There are several reasons that this Court should preclude Defendant Neal R. Lewis ("Lewis") from testifying as an expert on his own behalf regarding the value of services that he claims to have provided at Wagstaff's request in the Allen litigation. The clearest reason is that Rule 702 and *Daubert* require expert opinions to be based on sufficient facts and data—i.e., "good grounds." Here, Lewis's opinions are the product only of guesswork. (*See* Neal Lewis Deposition Tr., attached as Exhibit A, at 152:19-153:5 (describing Lewis's thought process as "I'm going with ▮▮▮," and "you know, pick a number")).

Lewis's opinions also do not "fit" the case, because he does not measure the value of his services in *quantum meruit*, and because he provides several irrelevant opinions about Wagstaff's alleged conduct. His valuation opinion is also unreliable, and Lewis has failed to establish that he is qualified to give it.

This Court has held that the case boils down to two questions: "(1) whether Defendant did any work on the Allen lawsuit at Plaintiff's behest and (2) if so, the amount and value of such work." (Order, Dkt. No. 109, at 2). The first question does not call for expert testimony. The second question does, and Lewis purports to give it, asserting that his legal services were worth $▮▮▮▮. (Lewis Expert Aff., Dkt. No. 113 ("Lewis Aff."), at ¶ 6(k)). The problem is, Lewis provides this Court with absolutely no basis for that calculation, other than his belief—previously rejected by this Court—that he is entitled to a contingency fee. Lewis arrived at $▮▮▮▮ by applying the contingency fee provided for in his contract with Charlisa Allen, assigning half of it to the case after Wagstaff's involvement, and then splitting the remaining $▮▮▮▮ with Wagstaff—i.e., he has essentially made for himself a 50/50 deal with Wagstaff. Notably, Lewis has failed to:

- Keep any contemporaneous time records, such that this Court could reliably determine the amount of hours that he worked on the Allen case;

- Determine a reasonable hourly rate for his work (instead, Lewis expressly rejects an hourly computation); or

- Apply any mathematical formula whatsoever that leads to a sum of $██████.

While Lewis fails to support his valuation opinion, Lewis offers numerous additional opinions on subjects that this Court has declared off-limits, with a threat of sanctions. For instance, Lewis opines that Wagstaff's alleged failures adversely affected the settlement value of the Allen litigation, that Wagstaff "failed to adequately prepare the claim for settlement or for trial"; that Wagstaff violated rules of professional conduct; and that Wagstaff's services were also worth $██████. (Lewis Aff. at ¶¶ 6-7). The Court should exclude these irrelevant opinions, which clearly do not "fit" the case.

For all of these reasons, this Court should preclude Lewis from testifying as an expert.

## II.   BACKGROUND

Lewis purports to opine on the two issues that now comprise the entire case: a description of legal services provided at Wagstaff's request, and the reasonable value of those services. (Lewis Aff. at ¶ 5). However, his Affidavit immediately veers off that road, offering Lewis's musings about Wagstaff's performance in the Allen case and about the value of Wagstaff's services, among other things. (*Id.* at ¶¶ 6-7).

Lewis's "expert opinions" are also deeply and fatally flawed. He provides billing records that he manufactured years after the fact to, in theory, describe the services he provided at Wagstaff's request. (*See id.* at pp. 7-43 (¶ 8)). However, these records, and Lewis's testimony, demonstrate that the "records" are mere guesses. Lewis also values his services in the Allen case at $██████. (*Id.* at ¶ 6(k)). Yet, Lewis's Expert Affidavit provides no reasonable explanation for

that number, and his deposition testimony reveals that he improperly applied contingency fee principles to reach that figure, as described below.

## A.     Lewis's billing records

Lewis's Expert Affidavit includes billing entries from May 1, 2014 through June 8, 2017. (*See id.* at pp. 7-43 (¶ 8)). Lewis asserts that from May 1, 2014 on, there was a "very broad implied request" from Wagstaff that he work on the Allen case. (Lewis Dep., Ex. A, at 56:22-58:17). Lewis believes that June 6, 2017, represents Wagstaff's last request for work, which he performed on June 8, 2017. (*Id.* at 134:25-135:4; Lewis Aff. at pp. 42-43). Lewis's time entries demonstrate that he was simply estimating the time that he might have spent, years after he allegedly performed any work. For example, the entry for March 25-28, 2016 (3 hours), states:

> General entry: Discovered that Jon Kieffer and Jack Hyde had not filed the supporting documents necessary to Pat Earl's expert testimony being considered reliable. I know this based on the March 25 email to Jon Kieffer requesting those documents. I believe that I eventually did figure out a way how to get a copy of those documents off PACER but I'm not certain of that. It might have been a telephone conference with Jack Hyde or an email with Jon Kieffer that I can't find. But I knew it before receiving notice of Baxter's request to file a response, and my immediately thinking that provided a perfect vehicle to solve the deficient filing.

(Lewis Aff. at p. 32). This paragraph demonstrates that Lewis was unsure about what he supposedly did and when, and that he claims time for work not requested by Wagstaff.

At his deposition, Lewis acknowledged that he did not keep contemporaneous time records. (Lewis Dep., Ex. A, at 143:3-23). Instead, Lewis reviewed whatever documents he could find to "create my time record," which was as "an informed projection of the time spent." (*Id.* at 143:8-144:1). Lewis did not remember many of the events cited in his records. For instance, in discussing a particular phone call, Lewis stated: "I can't remember where I was or

what I was doing, let's see, five and a half years ago, no. Definitely not. I don't think anybody would." (*Id.* at 121:15-19). He also testified that "memory … is a funny thing." (*Id.* at 120:23).

Lewis agreed that various entries in his billing records were incorrect. For instance, he described one 16-hour entry as a conservative estimate, speculating that he probably worked more like 30 or 40 hours on the project. (*Id.* at 212:1-22). He agreed that another eight-hour time entry was inaccurate and should be struck from his report. (*Id.* at 233:5-25). And, he agreed that e-mails in 2014 related to the "potential referral of Calvin Presco" were a "typographical error that we didn't catch" and "should be struck." (*Id.* at 220:22-221:20). As Lewis acknowledged, "[i]t's very difficult to recreate your time after the fact." (*Id.* at 2254:15-22).

### B.    Lewis's value estimation

In his Expert Affidavit, Lewis concludes that "the reasonable value in *quantum meruit* of the legal services I provided in the Allen litigation from May 7, 2014 to June 6, 2017, at the request of Plaintiff Wagstaff in the Allen litigation was $▬▬▬." (Lewis Aff. at ¶ 6(k)). He also claims that Wagstaff's services in the Allen case should be given the same $▬▬▬ value. (*Id.*). Nowhere in his Expert Affidavit does Lewis provide a formula that adds up to $▬▬▬. (*See generally id.*). Nowhere in his Expert Affidavit does Lewis disclose an hourly rate, or provide any information from which someone else could determine an objectively reasonable hourly rate. (*See generally id.*). In fact, despite having created after-the-fact time entries with specific hours assigned to them, Lewis did not even bother totaling the entries. (*See id.* at ¶ 8).

Lewis's explanation for the $▬▬ figure is muddled, but Lewis clearly believes that he is entitled to a percentage of the contingency fee from the Allen litigation. Lewis testified that he "kind of halved the case," meaning that he assigned $▬▬▬ to the portion of the case that occurred before Wagstaff's involvement and $▬▬▬ to the period after Wagstaff's

involvement—based solely on this Court's ruling that Lewis could not recover for any work that occurred before Wagstaff's involvement. (Lewis Dep., Ex. A, at 151:14-152:11). Lewis made no effort to compare the value of the work in the first and second "halves" of the case. (*See id.*). Then, Lewis split the second $█████ between himself and Wagstaff. Lewis claims that he made a "conservative" estimate that is "undervaluing my work significantly" by splitting the fee between himself and Wagstaff. (*Id.* at 152:19-153:18). And, yet, Lewis concedes that "Wagstaff had done the bulk of the heavy lifting in the case." (*Id*. at 287:5-15).

Lewis does not believe he should be compensated on an hourly basis for his work on the Allen case. (*Id.* at 144:22-145:2). As a result, Lewis did not reach $█████, or any other figure, by multiplying his hours worked by an objectively reasonable hourly rate. (*Id.* at 153:23-154:4; *see also generally* Lewis Aff.). Though Lewis did not perform an hourly calculation in his Expert Affidavit, Wagstaff gave Lewis additional opportunities to provide such a calculation, through interrogatories and at Lewis's deposition. However, the numbers Lewis provided were wholly unreliable, and, as noted, he continues to disavow any recovery based on an hourly rate. (Lewis Dep., Ex. A, at 153:23-154:4).

Lewis testified that he has not charged any client an hourly rate in the past four years. (*Id.* at 243:5-11). He also testified that he has "no idea" what his hourly rate was when he previously charged clients by the hour. (*Id*. at 253:16-18). In response to interrogatories, Lewis set his hourly rate at $619.15, based on his estimation of time allegedly spent and dollars allegedly recovered on certain contingency fee cases. (*Id.* at 243:12-244:1). Notably, Lewis did not include time spent on cases that he lost or worked pro bono in his calculations. He claimed at his deposition that his "batting average" is 98 to 99 percent, and that the only two cases he ever remembers losing occurred about ten years ago. (*Id.* at 248:8-250:1).

Lewis must have forgotten two very recent losses. On August 3, 2019, the Northern District of Ohio entered an order denying a motion for reconsideration and entering a defense verdict, in a case where Lewis represented the plaintiff. The Sixth Circuit recently affirmed. *See Smith for Schwartz v. Woolace Elec. Corp.*, No. 3:17 CV 2578, 2019 WL 5420647, at *2 (N.D. Ohio Aug. 23, 2019), *aff'd*, No. 19-3907, 2020 WL 4464852 (6th Cir. Aug. 4, 2020).[1] Lewis also seems to have forgotten that in November 2019 he had another case dismissed for failure to prosecute. The court first issued an Order on October 11, 2019, directing the plaintiff to show cause by October 31, 2019, as to why the case should not be dismissed for failure to prosecute. (Order, *Norris v. Steuben Lakes Regional Waste Dist.*, No. 76D01-0905-PL-415 (Ind. Sup. Ct. Steuben Co.) ("*Norris*") (Oct. 11, 2019), attached as Exhibit B). On November 7, 2019, the court dismissed the case, having received notice of the plaintiff's failure to show cause. (Order Dismissing Plaintiff's Complaint with Prejudice, *Norris* (Nov. 11, 2019), attached as Exhibit C). That case had been pending for more than ten years. (*See* Notice of Plaintiff's Failure to Timely Show Cause for Why Plaintiff's Case Should Be Dismissed Pursuant to Rule 41(E) and Motion for Dismissal, *Norris* (Nov. 4, 2019), attached as Exhibit D, at p. 1).

Lewis's hourly rate "calculation" suffers from additional infirmities. Lewis did not maintain time records in any of the cases he used for his calculation, nor did he attempt to manufacture records as he did for the Allen lawsuit. Instead, Lewis simply guessed at the number of hours he worked on the four cases that he used for his calculation. (Lewis Dep., Ex. A, at 244:7-17). Lewis also failed to understand or apply the simple math concept of a weighted average. Lewis took the effective hourly rate for each individual case and simply divided by four. (*Id.* at 250:18-251:25). Because he assigned different numbers of hours to different cases

---

[1] There were several lawyers on the plaintiffs' side, but it would be ironic if Lewis were to disclaim responsibility because someone else was lead counsel, given that in this case he is claiming at least an equal share of the contingency fee in a case where Wagstaff was lead counsel.

(*id.* at 245:20-25), Lewis needed to assign greater weight to the cases with larger numbers of hours to perform the calculation properly. Finally, Lewis admits that he made no effort to determine the reasonable value for legal services in rural Indiana, where he was practicing during the Allen case, or in any other potentially relevant jurisdiction. (*Id.* at 252:18-253:12).

### III.  DAUBERT STANDARD

Under Rule 702, A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"An expert opinion 'must be supported by appropriate validation—i.e., 'good grounds,' based on what is known.'" *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 988–89 (8th Cir. 2001) (quoting *Daubert*, 509 U.S. at 590). "An expert should be disqualified 'if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the [fact finder.]'" *Bennett v. Corizon, LLC*, No. 2:10-CV-04149-SRB, 2016 WL 8231827, at *2 (W.D. Mo. Oct. 28, 2016) (quoting *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952-53 (8th Cir. 2014)). In evaluating reliability, the court should "customize its inquiry to fit the facts of each particular case." *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1083 (8th Cir. 1999). While the *Daubert* inquiry generally focuses on methods, not conclusions, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## IV.    ARGUMENTS AND AUTHORITIES

While there are several reasons that this Court should exclude Lewis's opinions under *Daubert*, subpart (b) of Rule 702 gets to the heart of the matter. This rule requires that an expert's testimony be "based on sufficient facts or data." Fed. R. Evid. 702(b). Lewis's ultimate conclusion—that he is entitled to $█████—is not based on anything approaching sufficient facts or data. While the term is overused in *Daubert* briefing, Lewis's valuation opinion is truly an "ipse dixit" opinion, and should be excluded as such. *See Joiner*, 522 U.S. at 146; *Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1062 (D. Minn. 2012) (describing an *ipse dixit* opinion as "nothing more than the experts' litigation say-so"). *See also* Lewis Dep., Ex. A, at 152:19-153:5 (describing Lewis's thought process as "I'm going with ███," and "you know, pick a number")).

Lewis fares no better on the other prongs of Rule 702. His opinion would not be helpful to the fact-finder because it does not address the key issue in the case, his potential recovery on a "*quantum meruit*" theory. *See* Fed. R. Evid. 702(a). This "fit" prong also excludes Lewis's extraneous opinions on topics such as Wagstaff's value to the case and supposed ethical violations. Lewis has neither used "reliable principles and methods," nor applied them reliably to the facts of the case. *See* Fed. R. Evid. 702(c)-(d). And, Lewis is not qualified "by knowledge, skill, experience, training, or education" to testify about the reasonable value of his services in the Allen case, as he only uses contingency fees in his practice. *See* Fed. R. Evid. 702.

Finally, Lewis's asserted "opinion" on the question of whether he did any work at Wagstaff's request is not the proper subject of expert testimony.

**A.      This Court should preclude Lewis's valuation opinion because he does not support his $█████ figure with any reliable facts or data.**

As noted above, to be admissible, expert opinions must be based on "good grounds, based on what it known." *Glastetter*, 252 F.3d at 988–89. Here, there are no "good grounds" for Lewis's opinions, or really any grounds at all. Lewis has only one true opinion that relates to the issues remaining in the case—that this Court should value his services in the Allen case at $██████. (Lewis Aff. at ¶ 6(k)). Lewis does not support this opinion with "sufficient facts or data," as is required by Fed. R. Evid. 702(b).

Most of Lewis's Expert Affidavit is devoted to time entries concocted years later. (Lewis Aff. at ¶ 8). And, even these unreliable entries are cast aside, as Lewis did not calculate his supposed contribution on an hourly basis. (*See generally id.*; *see also* Lewis Dep., Ex. A, at 153:23-154:4). Instead, Lewis based his valuation opinion on nothing more than two even splits. First, he "kind of halved the case," thereby valuing all attorney work in the first half of the case the same as the second half. (Lewis Dep., Ex. A, at 151:14-152:11). Lewis made no effort to compare the value of the work in each "half" of the case. (*See id.*). Then, Lewis split the second $██████ between himself and Wagstaff. Though he thinks he might be entitled to more, Lewis claims that he made a "conservative" estimate that is "undervaluing my work significantly." (*Id.* at 152:19-153:18). Thus, Lewis admits that his own valuation is unreliable.

So, Lewis uses three data points to get to $██████, and none of them are supported by facts. Though Lewis does not say it, simple math demonstrates that his starting point is $████████ (*See id.* at 152:3-11 (stating that there was "a ███████████" remaining after Lewis "kind of halved the case"). How Lewis got to $██████ is mostly unexplained. The figure does not even appear in his Expert Affidavit. At his deposition, Lewis testified that he based his calculation on **his** contingency fee agreement with Ms. Allen. (*Id.* at 154:14-21). That agreement

is hardly a reasonable starting point, given that this Court has held the agreement to be void and unenforceable, and given that this Court has limited Lewis's remaining claims to a potential recovery in *quantum meruit*. (*See* Order, Dkt. No. 109, at 2).

Even if Lewis could justify $████ as a starting point for his analysis, he has no supporting data or analysis for his next two steps. His only explanation as to why he "kind of halved the case," leaving a $████ pot, is that this Court's rulings rendered Lewis's work before Wagstaff's involvement irrelevant. (Lewis Dep., Ex. A, at 152:2-11). He provides no other explanation as to why the work before Wagstaff entered the case and after should be valued equally. Notably, "[a]ny step that renders the analysis unreliable under ... *Daubert* ... renders the expert's testimony inadmissible." *Wagner v. Hesston Corp.*, No. CIV.03-4244(JNE/JGL), 2005 WL 1540135, at *4 (D. Minn. June 30, 2005), *aff'd*, 450 F.3d 756 (8th Cir. 2006) (quoting *In re Paolo R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)). The second step in Lewis's three-step analysis is clearly unreliable, as it is based on legal rulings, not on facts or data.

Finally, Lewis fails to support his third step, splitting the remaining $████ with Wagstaff, with any reliable data or analysis. Lewis's Expert Affidavit focuses entirely on Wagstaff's actions, concluding that "I believe I am entitled to at least as much or more as attorney fees for legal services provided at the request of Plaintiff Wagstaff, as Plaintiff Wagstaff is entitled to receive in *quantum meruit* for the services of Plaintiff Wagstaff in the Allen litigation … ." (Lewis Aff. at ¶ 7 (quoted material in part (b))). Lewis fails to explain why **he** is entitled to $████ with any detail about the Allen case. Lewis fared no better in his deposition, where he justified his $████ figure based on his fee contract, and contingency rates in general. (Lewis Dep., Ex. A, at 154:14-155:16). Further, he admitted that Wagstaff had done "a monumental load of work," and that "some of their work was excellent." (*Id.* at 287:5-15). Yet,

his Expert Affidavit ties his own recovery to Wagstaff's alleged failures and appears to assume that Wagstaff was compensated based on *quantum meruit*, which it was not. (Lewis Aff. at ¶ 7).

In a variety of circumstances, courts within this circuit have consistently excluded expert opinions when they were not supported by sufficient facts or data. *See, e.g.*, *Krueger v. Johnson & Johnson Prof'l, Inc.*, 160 F. Supp. 2d 1026, 1031 (S.D. Iowa 2001), *aff'd*, 66 F. App'x 661 (8th Cir. 2003) (metallurgist's opinions excluded as based on "insufficient facts" where medical screws broke following implantation, as expert could not explain the impact of conditions inside the body); *Savage v. Union Pac. R. Co.*, 67 F. Supp. 2d 1021, 1036–37 (E.D. Ark. 1999) (causation opinion excluded where court held that article cited in support of opinion did not actually support the opinion); *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1132 (D. Minn. 2003) (causation expert relied on insufficient data in failing to link plaintiff's exposure to her basal cell carcinoma).; *Martin v. Crown Equip. Corp.*, No. 05-3407-CV-S-GAF, 2008 WL 11337826, at *4 (W.D. Mo. Jan. 16, 2008) (Fenner, Dist. J.) (expert's failure to support opinion with alternative warning or sufficient basis beyond speculation rendered opinion inadmissible).

This Court should reach the same conclusion and exclude Lewis's valuation opinion as the product of insufficient facts or data, in violation of Rule 702(b).

**B.      Lewis's valuation opinion is irrelevant because it does not measure his work objectively, as is required to recover on a *quantum meruit* theory.**

A second, equally sound, basis to exclude Lewis's valuation opinion is that it would not help the trier of fact. *See* Fed. R. Evid. 702(a). The *Daubert* court described this inquiry as one of relevance, or whether the opinion "fits" the case. *Daubert*, 509 U.S. at 591. Here, it is clear that Lewis's valuation opinion does not fit the case because the contingency fee principles that he used are irrelevant to determining recovery under *quantum meruit*.

Lewis's **only** potential recovery in this case is based on *quantum meruit*. (Order, Dkt. No. 109, at 2). Under Missouri law, "[r]ecovery in *quantum meruit* for services performed is limited to the reasonable value of the services." *Richard B. Curnow, M.D., Inc. v. Sloan*, 625 S.W.2d 605, 607 (Mo. banc 1981).[2] "The reasonable value of services is the price usually and customarily paid for such services or like services at the time and in the locality where the services were rendered." *Koppe v. Campbell*, 318 S.W.3d 233, 241 (Mo. Ct. App. W.D. 2010); *see also Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated."). Here, Lewis's *quantum meruit* claim is a claim for attorney's fees. "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09-CV-01252 ERW, 2020 WL 870987, at *4 (E.D. Mo. Feb. 21, 2020) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)).

Instead of using an hourly calculation, or any other objectively reasonable basis to value his services, Lewis picked a number out of thin air. The analysis above shows why the number $███████ is wholly unsupported under any set of principles. But even if it could be justified based on contingency fee principles, those principles are irrelevant here. Lewis is only entitled to recover—at most—for "work on the Allen lawsuit at Plaintiff's behest." (Order, Dkt. No. 109, at 2). While Lewis made some effort to catalogue his alleged work, years after the fact, he did not in any way apply that information to his calculations. (*See* Lewis Aff. at ¶ 8).

---

[2] The parties do not dispute that Missouri law applies to Lewis's claim for recovery in *quantum meruit*. (*See* Doc. 46 at p. 13, "the attorney fees to which [Lewis is] entitled should be determined on a *quantum meruit* basis pursuant to the law of Missouri"; and Dkt. No. 78-1 at pp. 3-5).

Lewis's deposition testimony further supports the conclusion that his $███████ valuation is irrelevant. First, he admits that he did not factor in his hourly work in reaching that conclusion. (*Id.* at 153:23-154:4). Second, he testified that he should **not** be compensated on an hourly basis for his work on the Allen case. (*Id.* at 144:22-145:2). Thus, he has disavowed compensation on the only basis that the law allows. Finally, Lewis has even contended—contrary to prior court orders—that the amount of his recovery is immaterial to this action, which he claims is limited to whether he is entitled to **any** recovery. (Lewis Dep., Ex. A, at 171:17-172:11). While Wagstaff disagrees with Lewis's contention, his multiple statements undermining the relevance of his valuation opinion support excluding it under Rule 702(a). *Cf. Henry v. Johnson*, No. 16-4249-CV-C-WJE, 2018 WL 10158856, at *4 (W.D. Mo. July 10, 2018) (excluding attorney's opinion on the operation of political campaigns as unhelpful to the fact finder).

In addition, Lewis's opinions about Wagstaff's conduct in the Allen case, including alleged ethical violations, and his consideration of time prior to Wagstaff's involvement, are cited as the basis for Lewis's fee calculations. (*See* Lewis Aff. at ¶¶ 6-7). These opinions clearly should be excluded, but they also taint Lewis's entire valuation. This Court has repeatedly warned the parties not to venture outside the narrow issues remaining in the case, and this Court has expressly removed those issues from the case. (*See* Order, Dkt. No. 124, at 2, 14-15). Lewis's reliance on information that this Court has deemed irrelevant, as the foundation for his valuation, is yet another reason to exclude his testimony entirely.

C.    **Lewis's valuation opinion is unreliable, as there is too great an "analytical gap" between his conclusion and what little data he relies upon.**

Yet another reason to exclude Lewis's valuation is that it is not the product of reliable principles and methods that have been reliably applied to the facts of the case. *See* Fed. R. Evid.

702(c)-(d). In evaluating an expert's methodology, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

In this case, Lewis did not use reliable methods; instead, he used extremely basic math that is untethered to any reality in the Allen case. As described above, Lewis's entire methodology was to pick $███████ as a starting point, based on his contract and contingency fee principles; to halve that number because this Court excluded his work before Wagstaff joined the case; and then to halve the resulting $████████ based on his unsupported theory that he deserves at least as much of a recovery as Wagstaff. *See supra*, § IV.A.

And, it may be generous to acknowledge even that methodology, as Lewis's three-step calculation is not laid out in his Expert Affidavit, as required by Fed. R. Civ. P. 26(a)(2)(C). The only support in Lewis's Expert Affidavit, besides his ruminations about Wagstaff's performance in the Allen case, is Lewis's manufactured billing entries. (Lewis Aff. at ¶ 8). These entries, created years later, are wholly unreliable, for reasons laid out above. *See supra*, § II.A. And, applying the rule of *Joiner*, the "analytical gap" between those entries and Lewis's opinion is more like a canyon. There is simply no relationship between those billing entries and Lewis's $██████ valuation, as Lewis admits. (Lewis Dep., Ex. A, at 153:23-154:4).

For these reasons, this Court should conclude that Lewis's methodology is unreliable and should exclude his opinions under Rule 702 and *Daubert*.

**D.      Lewis has not established that he is qualified to opine about billing rates.**

A final reason to exclude Lewis's valuation opinion is that he is not qualified to give it. Again, an expert must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent of the expert opinion has the burden to demonstrate the expert's qualifications. *See* Fed. R. Evid. 702 (Adv. Comm. Notes, 2000 Amendments). Here, Lewis has

failed to provide any information about his expertise regarding attorney's fees. Rather, he simply posits that all attorneys are automatically experts in anything related to the law. (Lewis Dep., Ex. A, at 192:20-24). By this "logic," a tax attorney could be an expert in a criminal case.

Here, Lewis has provided no specific information regarding his expertise in legal fees, and he has provided contrary testimony. He has not billed a client on an hourly basis for several years. (Lewis Dep., Ex. A, at 243:5-11). It has been approximately 15 years since Lewis billed hourly with any regularity. (*Id.* at 246:5-247:13). Lewis has "no idea" what his hourly rate was when he last billed hourly. (*Id.* at 253:16-18). Lewis also made no effort to qualify himself by knowledge, as he might have done by studying the billing rates in potentially relevant jurisdictions. (*Id.* at 252:18-253:12). Therefore, Lewis has not established that he is qualified to give an expert opinion valuing his work on the Allen case.

**E.      Lewis's opinion that he did work at Wagstaff's request is not an expert opinion.**

Finally, this Court should preclude any expert opinions about whether Lewis did work at Wagstaff's request. Lewis purports to give an expert opinion on "[a] description of the legal services I provided in the Allen litigation at the request of Wagstaff & Cartmell, L.L.P." (Lewis Aff. at ¶ 5(a)). That information is fact testimony, not expert opinion.

For reasons described above, Lewis's valuation opinion is inadmissible. And, even if it were admissible, that valuation opinion is entirely divorced from Lewis's billing entries, as he has acknowledged. (Lewis Dep., Ex. A, at 153:23-154:4). Thus, Lewis's testimony about the work he did in the Allen case is purely fact testimony. Assuming the Court agrees that Lewis's valuation opinion should be stricken, then the Court should preclude Lewis from testifying as an expert entirely.

**V.      <u>CONCLUSION</u>**

For all of the foregoing reasons, this Court should exclude Neal Lewis's proffered expert testimony under Rule 702 and Daubert.

**DATED** this 7th day of August, 2020.

Respectfully submitted,

/s/ *Dane C. Martin*

| Todd P. Graves | MO #41319 |
|---|---|
| Dane C. Martin | MO #63997 |

GRAVES GARRETT LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
(816) 256-3181 (telephone)
(816) 256-5958 (facsimile)
tgraves@gravesgarrett.com
dmartin@gravesgarrett.com

/s/ *John P. O'Connor*

| John P. O'Connor | MO #32352 |
|---|---|
| Jonathan P. Kieffer | MO #49025 |
| Jack T. Hyde | MO #63903 |

WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 (telephone)
(816) 531-2372 (facsimile)
joconnor@wcllp.com
jpkieffer@wcllp.com
jhyde@wcllp.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing on August 7, 2020, using the Court's CM/ECF electronic filing service, thereby sending notice of the filing to all counsel of record.

/s Dane C. Martin
Attorney for Plaintiff